UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

WILLIAM HOWARD WARD,
Plaintiff,
v.
COUNTY OF SAN DIEGO et al.,
Defendants.

Case No.: 23-cv-1819-BJC-JAC

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 86]**

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint. ECF No. 86. Plaintiff has filed an Opposition (ECF No. 88) and Defendants have filed a Reply (ECF No. 89). The Court DENIES IN PART AND GRANTS IN PART Defendants' Motion for the following reasons.

## I. FACTUAL BACKGROUND[1]

The events giving rise to this action occurred in 2022 when Plaintiff William Ward ("Plaintiff") suffered an episode of acute psychosis that resulted in his incarceration.

On the morning of September 4, 2022, Plaintiff was lost and wandering the beaches in La Jolla. Around 10:35 a.m., Plaintiff experienced an auditory and visual hallucination

[1] Facts are taken from Third Amended Complaint unless otherwise noted.

that caused him to believe a child was in danger, resulting in him attempting to save the child. According to Respondents, Plaintiff attempted "to kidnap a two-year old from the arms of its pregnant mother." MTD, ECF 86-1 at 1. A brief altercation ensued, but no one other than Plaintiff was injured. Plaintiff was immediately arrested by City of San Diego Lifeguards.

Plaintiff was compliant and non-violent. He remained handcuffed at the location until San Diego Police Department ("SDPD") Officers arrived. Around 10:50 a.m., a paramedic from City Emergency Medical Services ("EMS") evaluated Plaintiff. The paramedic determined that Plaintiff was psychologically and emotionally disturbed and that he needed psychiatric treatment, which the paramedic conveyed to SDPD Officers. At 11:05 a.m., the SDPD Officers reported to the City of San Diego 9-1-1 Operator that Plaintiff was approved for a "5150" hold (i.e., involuntary psychiatric hospitalization) based on his incoherence.

Plaintiff was then taken to the SDPD Northern Substation where he was interviewed about the altercation. The SDPD Detective ended the interview because Plaintiff's statements were "not making any sense." SDPD Officers then transported Plaintiff to Scripps Memorial Hospital La Jolla ("Scripps"). Plaintiff was treated for an abrasion above his left eye and cuts on his knees that he sustained while being arrested. Scripps staff cleared Plaintiff for incarceration. Around 5:50 p.m., the SDPD Officers transported Plaintiff to San Diego County Central Jail ("Central Jail") for booking and pre-trial detainment.

### A. County Central Jail Events

After booking, Plaintiff was placed in a crowded holding cell. He blacked out while being booked and only has faint memories from this period in Central Jail. After waiting three hours in the holding cell, Plaintiff was medically screened by Defendant Stephen Yi RN ("RN Yi"), a registered nurse in the Central Jail Medical Services Division responsible for conducting medical and mental health screening for new inmates. Plaintiff was enduring a mental health crisis when RN YI assessed him. Plaintiff spoke incoherently,

displayed memory loss, heightened paranoia, and disassociation. Plaintiff claims he also had an open laceration on his forehead.

RN Yi wrote in his notes that Plaintiff was "treated for his wounds" (without specifying where on Plaintiff's body the wounds were). RN Yi did not evaluate Plaintiff's wounds or take pictures of them. RN Yi did not take Plaintiff's blood pressure and did not include any notes about Plaintiff's medical visit to Scripps or Plaintiff's discharge records from Scripps.  RN Yi referred Plaintiff for a medical sick call clinic encounter ("MDSC") for his laceration. RN Yi did not conduct a mental health screening, and his notes do not reflect Plaintiff's mental health condition, only stating that Plaintiff required "further assessment by a Qualified Mental Health Professional ("QMHP") who would conduct a psychiatric evaluation. Nothing else was written in RN Yi's assessment notes.

RN Yi and Deputy Morales, a classification officer in Central Jail, did not put Plaintiff in a psychiatric or medical unit. Instead they put Plaintiff into Enhanced Observation Housing ("EOH"), which is a single cell where Plaintiff would allegedly be checked on by a custodial deputy every fifteen minutes. It was a room the size of a janitor's closet that has a small window at face-level. Deputy Morales did not allow Plaintiff to make a phone call before he was placed in EOH. Plaintiff was alone and naked in the "filthy" cell, which lacked access to clean water, a blanket, or a mattress pad. Morales and Yi did not summon immediate medical care to further assess Plaintiff.

Plaintiff's parents had been trying to locate him all day. After repeated phone calls to San Diego law enforcement, a missing persons bulletin was issued for Plaintiff. That evening, RN Yi was alerted that Plaintiff was a missing person. RN Yi called Plaintiff's parents to notify them that he was in custody. Plaintiff's parents told RN Yi about Plaintiff's mental illness and that he had not been taking his medication. They told RN Yi that Plaintiff needed his medication immediately or else he would suffer even more severe psychosis. They told RN Yi that they feared for Plaintiff's health. Plaintiff's parents then sent emails to RN Yi with Plaintiff's medical records, including his psychiatric diagnoses and prescribed medications. They also gave RN Yi the contact information for Plaintiff's

treating psychiatrist and asked him to get in touch with the psychiatrist for medication recommendations.

Neither RN Yi, nor any staff from Central Jail, responded to Plaintiff's parents' emails. RN Yi did not call Plaintiff's treating psychiatrist. RN Yi did not update Plaintiff's jail medical records with any of the information Plaintiff's parents sent (i.e., Plaintiff's psychiatric diagnoses, medication, and treating physician's contact information). RN Yi failed to tell his supervisor, Medical Supervisor Doe, a supervisor in the Medical Services Division ("MSD") in Central Jail responsible for overseeing the medical staff and inmates requiring medical treatment, about Plaintiff's "urgent" medical needs.

From September 4 to September 9, Plaintiff's mental state continued to decline, and he became dehydrated and severely ill with pneumonia, bacteremia, and a lung infection. Defendant Emilizia Cornejo ("NP Cornejo"), a Nurse Practitioner in the San Diego Sheriff's Department ("SDSD") MSD at Central Jail, and Defendant Carina Echon ("RN Echon"), a Registered Nurse at Central Jail, were responsible for checking on Plaintiff and administering necessary medical care. Defendants RN Yi, Medical Supervisor Doe, NP Cornejo, and RN Echon did not conduct the required nursing assessments on Plaintiff every twenty-four hours while he was in EOH during this time. They also did not evaluate Plaintiff, visit him, or make any entries in his medical records. In EOH housing, Plaintiff was seen for a wellness check only once, on September 7, 2022 at 9:00 a.m., by RN Levy Santos.

On September 5, Plaintiff's parents called Central Jail and spoke to a techcare staff member in the SDSD Medical Services Division at Central Jail, who told them that Plaintiff was being treated in the MSD. Techcare staff confirmed they received Plaintiff's medical records and prescriptions from the parents. Plaintiff's parents again told techcare staff that it was urgent for Plaintiff to take his prescribed medications to abate his psychosis.

Chantel Enriquez is a mental health counselor with the County of San Diego who evaluated Plaintiff on September 5, 2022. Enriquez noted that Plaintiff had visual and auditory hallucinations and was unable to discuss many topics due to being preoccupied

by internal stimuli, but he was alert, awake, and cooperative. Michael Boyer LMHC, a mental health counselor with the County of San Diego, came to the same conclusion when he met with Plaintiff on September 6, 7, and 8.

Richard Gilbert, MHC is a mental health counselor with the County of San Diego who evaluated Plaintiff on September 6, 2022, and September 7, 2022. Gilbert noted that Plaintiff was "alert and awake" and "cooperative" in each assessment. On September 8, 2022, Gilbert evaluated Plaintiff and again noted he was alert, awake, and cooperative, yet had "irrelevant and relevant conversation, inappropriate blunt affect, irritable mood, abstract disorganized thought process [and] poor impulse control." This was a "significant" decline from his September 7, 2022, evaluation.

RN Yi, Medical Supervisor Doe, Gilbert, NP Cornejo and RN Echon did not send updates to Psychiatrist Janet Medenwald-Hogg, MD, ("Medenwald-Hogg"), a QMHP contracting with the SDSD Medical Services Division responsible for conducting Plaintiff's psychiatric evaluation. They did not notify Medenwald-Hogg about Plaintiff's immediate psychiatric need. During that time, these Defendants failed to order Plaintiff's prescriptions or contact Plaintiff's treating psychiatrist. QMHP Medenwald-Hogg did not evaluate Plaintiff.

On or about September 9 before 7:32 a.m., NP Cornejo conducted an MDSC visit to evaluate Plaintiff's head laceration above his left eye and knee scrape. This was five days after RN Yi had requested the MDSC for Plaintiff. NP Cornejo went to Plaintiff's cell with Deputy Doe and looked at Plaintiff through the window in the cell door. NP Cornejo and Deputy Doe did not enter Plaintiff's cell. NP Cornejo reported in her notes that Plaintiff was "lying in bed" and noted "NAD" ("No Abnormality Detected"). NP Cornejo could see in Plaintiff's records that he had not been assessed by a nurse since his initial assessment by RN YI on September 4. Nonetheless, NP Cornejo did not conduct a nursing assessment as required. Instead of evaluating and treating Plaintiff, NP Cornejo scheduled an MDSC encounter for the following day.

On September 9, 2022, Gilbert again evaluated Plaintiff, who now appeared to be in

a "stupor" and remained immobile. Despite his noticeable decline, Gilbert did not summon any medical aide or assistance. Plaintiff did not move for over 24 hours. During that time, Deputies Brauer, Gula, Diaz, Altmeyer, Valenzuela, Studebaker, Gonzalez, Santos, Ramirez, Williams, Gaona, Martinez, Morgan, and Lt. Daniel Dennis all conducted EOH welfare checks and did not summon any medical attention for Plaintiff. The above-mentioned deputies saw Plaintiff ill, lethargic, coughing, having trouble breathing, and disassociated. His psychiatric and medical conditions were "severe" and "obvious." No one meaningfully checked on Plaintiff from September 9, to September 10, 2022, at 1:48 p.m. when he was deemed "man down."

Plaintiff developed sepsis due to pneumonia and H. influenzae. He had acute respiratory failure, drastically limiting his oxygen supply. He became severely ill, feverish, and aspirated his own vomit. His lungs were so infected and filled with mucus that he suffered a pulmonary embolism—a sudden blockage in his lung arteries. He also developed metabolic encephalopathy, described by Plaintiff as "delirium, loss of consciousness due to toxicity, and lack of oxygen to his brain." ECF No. 1 ¶ 99. Due to the advanced stage of his illness, Plaintiff suffered a seizure for the first time ever, which resulted in bilateral posterior shoulder dislocation—a rare occasion where both shoulders are dislocated towards the back of the body. On the afternoon of September 10, RN Echon found Plaintiff lying on the floor of his cell, exhibiting seizure-like symptoms, foaming at the mouth, and unresponsive. RN Echon checked Plaintiff's vital signs (the first time any employee at Central Jail had checked his vitals), which were abnormal.

**2. UCSD and Tri-City Hospital Stays**

On September 10, Plaintiff was transported to UC San Diego Hospital ("UCSD") and admitted to the Surgical Intensive Care Unit ("SICU") around 2:30 p.m. Due to contracting pneumonia and/or bacteremia, Plaintiff had suffered a pulmonary embolism, was paralyzed on his left side, was bleeding in his left brain, and had two additional seizures. Plaintiff was treated for bacteremia, pneumonia, sepsis, and acute kidney failure. Suspecting meningitis, UCSD doctors performed a lumbar puncture on Plaintiff on

September 11. UCSD staff received consent from Plaintiff's parents, since Plaintiff was in a coma. On September 12, Plaintiff was seen by an orthopedist, who diagnosed a complete posterior shoulder dislocation on his left side, with a reverse Hill-Sachs lesion (bone fracture).

On September 14, UCSD doctors performed a closed shoulder reduction to treat the dislocation of his left shoulder. On September 15, a UCSD psychiatrist diagnosed Plaintiff with schizoaffective disorder and prescribed medication. On September 16, UCSD doctors performed closed reductions on both shoulders—after discovering Plaintiff's right shoulder was also dislocated. The doctors ordered Plaintiff to wear arm slings because he was at high risk for further dislocations and noted Plaintiff would need shoulder reconstruction surgery in the future.

UCSD medical staff updated the Central Jail MSD about each of these diagnoses and treatments. A Central Jail psychiatrist also reviewed Plaintiff's psychiatric records and medication. Plaintiff was transferred to Tri-City Medical Center, where he stayed from September 20 to 27 to complete IV antibiotics. At Tri-City, SDSD Custodial Officers stayed in Plaintiff's room, kept him handcuffed to his bed, and would only uncuff him to use the bedside toilet.

3. **Additional County Central Jail Events**

On September 27, Plaintiff was discharged from Tri-City Medical Center into a Medical Observation Bed ("MOB") at Central Jail. The staff knew of Plaintiff's dislocated shoulders, slings, limited range of motion, shoulder pain, weakness, inability to get up from the floor by himself, continued infection, need for antibiotics, psychiatric diagnosis, medical and psychiatric prescriptions, and the recommended follow-up care. The assessing nurse noted Plaintiff was at risk for injury. Plaintiff was put in a small cell with two cellmates and given the top bunk. Plaintiff could not climb up to his bed with both of his arms in slings, so he had the mattress moved down to the floor. Plaintiff was unable to raise his arms higher than his waist. His cellmates helped him dress.

On September 28, Plaintiff was evaluated (for the first time) by a QMHP at Central

Jail. The QMHP also spoke with Plaintiff's attorney, who shared Plaintiff's mental health needs and prescriptions again. Plaintiff was not given a medical wrist band, resulting in him not receiving his medication when the medical staff made their rounds.

As a result, Plaintiff experienced increased blood pressure, insomnia, worsened shoulder pain, and declining mental health. Plaintiff asked medical staff members for his medication multiple times, but they ignored him. Plaintiff was given a medical wristband two days after his arrival in the MOB. He had missed two days of medications by that time.

On September 30, Plaintiff was punched in the face and chest by his cellmate. Plaintiff reported the assault to a Deputy and was removed from his cell. On September 30, Plaintiff was removed from the MOB at Central Jail and transferred to George Bailey Detention Facility ("George Bailey").

**4. George Bailey Detention Center Events**

Plaintiff arrived at George Bailey at approximately 4:44 p.m. on September 30. Deputy Anderson, a classification Officer at George Bailey, was aware that Plaintiff had been assaulted by a cellmate and was aware of Plaintiff's psychiatric condition and medical needs (including his history of pneumonia and dislocated shoulders). Despite Plaintiff's condition, Deputy Anderson did not house Plaintiff in a protective unit, medical unit, or a psychiatric unit. Instead, Plaintiff was housed with violent inmates.

George Bailey Custodial Deputies Benjamin Rivera, Bryan Do, Ryan LaBranche, and/or Joshua McIntyre ("Bailey Custodial Deputies") brought Plaintiff to a general population dorm-style "pod." Plaintiff was again assigned a top-level bunk. Plaintiff told Bailey Custodial Deputies that he could not climb up the bunk with both of his arms in slings. The Bailey Custodial Deputies told Plaintiff to lay his mattress on the floor.

According to Plaintiff, the Bailey Custodial Deputies "greenlighted" him, signaling to inmate gang members that they could beat him. The Bailey Custodial Deputies purportedly told the gang members about Plaintiff's alleged crime and knew that the inmates would want to beat Plaintiff because he had been arrested for attempting to kidnap a young child.

The Bailey Custodial Deputies allegedly left Plaintiff alone with the gang members.

A gang member slapped Plaintiff across the face, knocking him to the ground. The gang members then took Plaintiff to the showers and backed him in a corner. They punched him in the jaw several times and then smashed his head into the wall. The beating fractured Plaintiff's left mandible and caused a laceration on his forehead.

After the assault, Deputies gathered Plaintiff from the showers. His slings were soaked with blood and were discarded and not replaced. One of the Bailey Custodial Deputies allegedly told Plaintiff, "Next time you're at the beach, keep your hands to yourself," indicating that Plaintiff was being punished based on the facts of his arrest.

**5. Alvarado and Scripps Mercy Hospital Stays**

Plaintiff was taken to Alvarado Hospital where his forehead received stitches. On October 1, Plaintiff was transferred to Scripps Mercy Hospital where he was diagnosed with a fractured left jaw. Scripps performed a closed reduction on his mandible. After the surgery, Plaintiff's jaw was banded shut, requiring immobility for three weeks. The assault by the gang members left Plaintiff in worse pain in his shoulders, and he was prescribed medication. On October 5, a psychiatrist at Scripps ordered Plaintiff discharged to the jail psychiatric inpatient unit due to Plaintiff's declining mental health, admitted suicidality, and risk of further physical harm from inmates.

**6. Plaintiff Returns to Central Jail, Medical Observation Bed ("MOB").**

At Central Jail, Plaintiff was screened by a psychiatrist, who recommended Plaintiff be placed in Enhanced Observation Housing ("EOH"). The psychiatrist also recommended "prompt psychiatric follow-up and screening . . . prior to release." Yet, the Classification Deputy did not place Plaintiff in the jail psychiatric inpatient unit, despite the orders from the psychiatrist at Scripps. Instead, the Classification Deputy placed Plaintiff in a Medical Observation Bed ("MOB").

Plaintiff was in excruciating pain in his arms. He could not dress or undress by himself, requiring assistance from his cellmates. Plaintiff's jaw was banded shut. The metal implanted in his mouth cut his gums, causing them to bleed and swell. Plaintiff had to repeatedly ask medical staff for dental wax to protect his gums from the device's sharp

edges. Staff gave him small bits of dried wax that were not effective. Plaintiff was supposed to use a water flosser three times per day to clean his mouth and prevent infection. Medical staff/nurses failed to timely coordinate Plaintiff's requests to use the water flosser, causing Plaintiff to file several grievances. Despite his complaints, the Deputies only allowed Plaintiff to use the water flosser sparingly. The lack of dental care and hygiene resulted in inflammation and infection of Plaintiff's gums.

Scripps had Plaintiff on a liquid diet and prescribed him Ensure nutrition shakes three times per day for proper caloric intake. However, the MSD Staff only gave Plaintiff gelatin cups and milk for his meals, which were nutritionally insufficient for his size and needs. Plaintiff became malnourished and filed grievances in order to get his prescribed Ensure. Even then, he was denied the three shakes per day necessary for balanced nutrition. On one occasion, Deputies split one shake among several inmates, and Plaintiff was given a watered-down shake for his meal. In addition, Plaintiff was forced to re-use a single plastic spoon to eat his gelatin because there was not enough plasticware. Deputies did not sanitize the spoon for Plaintiff between meals, and he had no means to clean it himself. Plaintiff had difficulty eating and drinking due to his jaw pain and oral bands securing his jaw shut. Plaintiff lost approximately twenty pounds in six weeks.

Medical staff did not give Plaintiff his pain medication as prescribed, causing him to suffer high levels of pain in his jaw and shoulders. Plaintiff filed several grievances and made verbal complaints to get his prescription medication and ibuprofen. Medical staff gave Plaintiff his medication inconsistently. On one occasion, he was using the phone when the medicine cart arrived, and medical staff and Deputies refused to give him his medication. Plaintiff continued to ask for his medication over the intercom, but the medical staff and Deputies ignored him. Plaintiff went without his medication for twelve hours, causing him to suffer pain and lose sleep, worsening his physical and mental condition.

Despite Plaintiff's continued complaints about his shoulders, medical staff never gave him slings to wear. On October 10, per Plaintiff's request, X-rays were taken of his shoulders. Deputies put Plaintiff alone in a holding cell, with no food or water, for six hours

before the X-rays were taken. Aside from taking X-rays, no medical staff examined Plaintiff's shoulders and arms. No medical staff informed Plaintiff about the X-ray results. Plaintiff asked about the results, but medical staff and Deputies ignored him. No medical staff followed up with Plaintiff to address his shoulder pain. Deputy Jones accused Plaintiff of faking his shoulder injuries and told Plaintiff, "We know you know there's nothing wrong with your shoulders." Yet, Plaintiff's arm injuries were "obvious and apparent" to Jones, the medical staff, and other Deputies. For example, to take his medication, Plaintiff held the cup with his teeth and arched his back to send pills and water down his throat because he was unable to lift cups with his arms. Instead of assisting Plaintiff, the medical staff and Deputies laughed at his struggle.

Plaintiff was conditionally released to a psychiatric facility on October 17, 2022, where his condition began to improve.

## II. Procedural Background

On October 2, 2023, Plaintiff initiated this action by filing his original Complaint alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983, violation of the Bane Civil Rights Act, negligence, and intentional infliction of emotional distress against Defendants County of San Diego ("County"), Acting Sheriff Kelly Martinez in her official capacity, and Does 1-50. ECF No. 1. Plaintiff filed a timely First Amended Complaint pursuant to Federal Rules of Civil Procedure 15(a) against Defendants County of San Diego, Interim Sheriff Anthony Ray, and Does 1-50 on November 29, 2023, thereby mooting the original Complaint. ECF No. 7. The FAC was dismissed with leave to amend on March 26, 2024. ECF No. 23.

On April 11, 2024, Plaintiff filed a Second Amended Complaint ("SAC") against Defendants County of San Diego, RN Yi, NP Cornejo, RN Echon, NP Enworom, Classification Does 1 and 8, Deputy Does 2,5,6,9 and 10, Medical Supervisor Doe 3, Medical Doe 4, Deputy Supervisor Does 7 and 11. ECF No. 23. The Court denied Defendants' motion to dismiss the SAC on February 25, 2025. ECF No. 44. On July 21, 2025, the Court granted the parties' Joint Motion for Plaintiff to File a Third Amended

Complaint. ECF No. 62.

On July 23, 2025, Plaintiff filed the Third Amended Complaint ("TAC") against Defendants County of San Diego, RN Yi, NP Cornejo, RN Echon, Richard Gilbert, Robert Brauer, Nicolas Gula, William Diaz, Raymond Altmeyer, Adrian Valenzuela, Studebaker, Emilio Gonzalez, Israel Santos, Emmanuel Ramirez, Deputy Williams, Walberto Gaona, Deputy Martinez, Jason Morgan, Lt. Daniel Dennis, Benjamin Rivera, Bryan Do, Ryan Labranche, Joshua McIntyre, Deputy Anderson, Sergeant Guzman, and Does 1-11. ECF No. 63.

Plaintiff asserts seven causes of action: 1) deliberate indifference to serious medical condition and conditions of confinement under the Fourteenth Amendment; 2) failure to protect/intervene under the Fourteenth Amendment; 3) *Monell* liability- unconstitutional custom or practice; 4) violation of the Bane Act under Cal. Civ. Code § 52.1; 5) failure to summon medical care under Cal. Gov. Code § 845.6; 6) negligence; and 7) negligent supervision/training.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.") Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson,* 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

However, the court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). "[T]o nudge a claim 'across the line from conceivable to plausible,' a plaintiff must plead facts that, if true, 'allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hikma v. Amarin*, 608 U.S. 580, 590 (2026).

## IV. Discussion

Defendants argue that the TAC must be dismissed because: (1) the statute of limitations has run as to the newly named Defendants[2] and the relation back doctrine does not apply; (2) Plaintiff's claims against named Defendants lack specificity; (3) Plaintiff fails to plead sufficient facts to support his claims for (a) deliberate indifference to medical needs/conditions of confinement; (b) deliberate indifference to medical needs and conditions of confinement; (c) failure to protect/intervene; (d) violation of the Bane Act; and (e) violation of Govt. Code Section 845.6; and (4) Plaintiff's other negligence claims fail. Mot. at 1, ECF No. 86-1.

### A. Statute of Limitations and Relation Back Doctrine

Federal Rule of Civil Procedure 15(c) "is the only vehicle through which a plaintiff may amend his complaint, after a statute of limitation period has run, to accurately name a defendant who was not correctly named in the pleading before the limitation period had run." *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397, 1399 (9th Cir.1984). "Rule 15(c)(1) requires us to consider both federal and state law and employ whichever

[2] The 21 newly named Defendants are: Richard Gilbert, Robert Brauer, Nicolas Gula, William Diaz, Raymond Altemeyer, Adrian Valenzuela, Cole Studebaker, Emilio Gonzalez, Israel Santos, Emmanuel Ramirez, David Williams, Walberto Gaona, Erik Martinez, Jason Morgan, Lt. Daniel Dennis, Benjamin Rivera, Bryan Do, Ryan LaBranche, Joshua McIntyre, Christian Anderson, David Guzman.

affords the 'more permissive' relation back standard." *Butler v. Nat'l Communty Renaissance of Cal.*, 766 F.3d 1191, 1201 (9th Cir. 2014).

Here, California's two-year statute of limitations for personal injury claims applies to Plaintiff's claims under § 1983. *See* Cal. Civ. Proc. Code §335.1. (Claims for "assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another" must be filed within two years.) The statute of limitations began to run when Plaintiff was released to a psychiatric facility on October 17, 2022, and the two-year statute of limitations expired on October 17, 2024. TAC ¶ 171. He timely filed his original complaint on October 2, 2023, and the TAC was filed on July 23, 2025. Therefore, the claims concerning newly added Defendants are barred by the statute of limitations unless they relate back to the original complaint.

Defendants argue that the claims against the newly named Defendants are untimely and do not relate back to the original complaint because Plaintiff has not properly substituted them for the Does named in the original Complaint as required under California's relation back rules. ECF No. 86-1 at 7-8. As additional support for this contention, Defendants contend that Plaintiff continues to include "Does 1-11" in the TAC, but he attempts to add 21 new Defendants, which is eleven more Does than allowable. *Id.* Defendants contend that Plaintiff's negligence and Bane Act claims are also time-barred because they have a two-year statute of limitations. *Id.* In the alternative, if the Court finds that Rule 15 governs, Defendants contend that the newly added defendants did not receive notice of the "TAC within 90 days of the filing of SAC" as required under Rule 4(m). Reply at 1. Because the notice period had expired, Defendants claim that the TAC cannot "relate back" to the original date of filing. *Id.* at 2.

Plaintiff counters that the claims against the newly named Defendants are not time-barred and relate back under Rule 15(c). Oppo. at 8 ECF No. 88. Plaintiff contends that Defendants' arguments fail because they rely solely on California law regarding relation back, but Rule 15 requires that the Court apply the more permissive interpretation of relation back, which is federal law under the present facts. *Id.* at 14-15. Alternatively,

Plaintiff asserts that the claims relate back under California's relation back doctrine because both state and federal courts have found that failure to strictly comply with section 474 is not required, instead favoring litigation on the merits rather than dismissal on procedural grounds. *Id.* at 20-21.

The Court finds that Plaintiff's claims against the newly named defendants are not time-barred because they relate back to the initial complaint under either federal or California law. Under Rule 15, relation back applies if "the law that provides the applicable statute of limitations allows relation back." Fed.R.Civ.P. 15(c)(1)(A). Here, relation back is permitted by California law, which establishes the statute of limitations for § 1983 actions. *Davaloo v. State Farm Ins. Co.*, 135 Cal.App.4th 409 (2005). Therefore, the Court may determine whether the claims against the newly added Defendants relate back to the filing of the original complaint.

Under the present circumstances, Rule 15 provides a more permissive relation back standard because a plaintiff may add a new defendant even if the defendant was not listed as a Doe defendant in the timely complaint. *Butler*, 766 F.3d at 1202 (9th Cir. 2014)(citing *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). In contrast, California Code of Civil Procedure § 474 states that the statute of limitations is applied as of the date of an amended complaint that purports to add new defendants, unless the new defendants are substituted in for previously designated Doe defendants. *Woo v. Superior Court*, 75 Cal.App.4th 169 (1999)(Section 474 permits substitution "of a new defendant for a fictitious Doe defendant named in the original complaint as to whom a cause of action was stated in the original complaint.") Here, strict application of section 474 would result in the exclusion of 10 new defendants because Plaintiff seeks to add 21 new defendants, but Plaintiff only designated 11 Doe defendants in the preceding amended complaint. Instead, the Rule 15 test articulated in *Butler* is more permissive because it may allow the addition of new defendants who were not previously designated as Doe defendants.

//

//

**1. Rule 15**

"In order for an amended complaint to relate back under [Federal Rule of Civil Procedure] Rule 15(c)(1)(C), the following conditions must be met: "(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it." *Butler*, 766 F.3d at 1202 (9th Cir. 2014)(citing *Schiavone*, 477 U.S. at 29 (1986).

First, Plaintiff's assertions against the newly named Defendants arise from the conduct set forth in the original pleading. *Butler*, 766 F.3d at 1202. For instance, in his original Complaint, Plaintiff alleged that "Defendant DOES 1–50 deliberately ignored Ward's obvious medical and psychiatric conditions" over the time period of September 5-10." Compl. ¶¶ 48- 54. Plaintiff now names Deputies Brauer, Gula, Diaz, Altmeyer, Valenzuela, Studebaker, Gonzalez, Santos, Ramirez, Williams, Gaona, Martinez, Morgan and Lt. Dennis as the officers who conducted EOH welfare checks and did not summon any medical attention for Plaintiff. TAC ¶ 91. Plaintiff's claims against these Defendants arise from conduct previously alleged, thereby satisfying the first prong of the *Butler* test.

Similarly, Plaintiff's claims against Defendant Anderson arise from the same conduct asserted in the originally filed complaint. There, Plaintiff alleged that he was placed in general housing at George Bailey, despite the deputies' knowledge that Plaintiff was at risk of further attacks and that he had a medical condition. ECF No. 1 ¶¶ 78-79. In the SAC, Plaintiff added more detail to the claim, alleging that "DOE 8, a classification Officer at George Bailey, knew Plaintiff had been assaulted by a cellmate and was at risk for further attacks." SAC ¶ 123. Doe 8 "also knew about Ward's psychiatric condition and medical needs (including his history of pneumonia and dislocated shoulders). Despite Plaintiff's condition, … CLASSIFICATION DOE 8 deliberately decided not to house Ward in a medical unit or a psychiatric unit. Instead, they assigned Ward to housing with violent inmates. SAC ¶ 123. In the TAC, the assertions against Anderson arise from the

conduct alleged in the timely original complaint.

Regarding the George Bailey deputies, the original complaint asserted that they "watched the gang members beat Ward. The Doe Deputies deliberately did not intervene in the beating" and "signaled to the gang members to beat Ward and allowed them to do so without intervening." ECF No. 1 ¶¶ 89, 90. The allegations contained within paragraph 128-135 of the TAC reassert the same claims as in the timely-filed original complaint. Plaintiff solely adds the deputies' names, thus satisfying the first prong of *Butler.*

As to Defendant Supervisor Guzman, Plaintiff alleged in his timely Complaint and FAC that DOES 1-50 failed to properly and adequately supervise and monitor the care that was being provided to Plaintiff. ECF No. 1 ¶ 222; ECF No. 228. In the SAC, Plaintiff alleged that "DEPUTY SUPERVISOR DOE 11 failed to adequately train his subordinates in how to handle inmates with medical and psychiatric needs who were at risk of assault." ECF No. 23 ¶ 134. He reasserts the same claim in the TAC but seeks to replace Deputy Supervisor Doe 11 with Defendant Guzman. TAC ¶ 138 ("Sergeant Guzman failed to adequately train his subordinates in how to handle inmates with medical and psychiatric needs who were at risk of assault.")

Plaintiff's claims against Defendant Gilbert, a mental health professional, were not raised in the original complaint because Plaintiff did not remember that he was seen by a QMHP due to the psychosis he was experiencing at the time. After discovery was shared, Plaintiff learned that Gilbert evaluated him on September 6, 2022, noting Plaintiff was "alert and awake" and "cooperative." TAC ¶ 86. However, on September 9, 2022, Gibert allegedly noted that Plaintiff "appeared in a 'stupor' and remained immobile." *Id.* Plaintiff alleges that Gilbert did not summon any medical aid or assistance despite his declined condition. Although Plaintiff did not assert claims against Gilbert in the original complaint, they arise from the same conduct set forth in the original complaint because Plaintiff asserted that no medical assistance was summoned despite his serious decline in medical and psychological health. ECF No. 1 ¶ 186, 214. Accordingly, the claims against Gilbert arise from the same conduct asserted in the original complaint.

Next, the Court considers the second *Butler* factor, whether "the party to be brought in [] received such notice that it will not be prejudiced in maintaining its defense." *Butler*, 766 F.3d at 1202. The party added by amendment must receive notice as provided by Rule 4(m) for serving the summons and complaint, which provides that a defendant must be served within 90 days after the complaint is filed. *Id.* Constructive notice can be inferred where there is a "community of interest" shared by "the amended defendant and the original defendant." *Hassan v. Opeiu Local 30*, 25-cv-0869-CAB-AHG, 2026 WL 2186683, *2 (S.D. Cal. July 29, 2026)(citing *Korn v. Royal Caribbean Cruise Line, Inc.,* 724 F.2d 1397, 1399 (9th Cir. 1984). The Ninth Circuit has found that a defendant added via amendment was not prejudiced because he shared an attorney with the original defendant. *Mayshack v. Gonzales*, 437 Fed. Appx. 615, 621 (9th Cir. 2011); *Hassan,* 2026 WL 2186683, *2.

Defendants argue that the TAC must be dismissed because the newly added Defendants did not receive timely notice as required under Rule 4(m). Reply ECF No. 89 at 1. Plaintiff responds that the named Defendants received sufficient constructive notice because there is a "community of interest with the named Defendants as they are all, or were all, employed by the County of San Diego and are all represented by the same attorney." Oppo. ECF No. 88 at 19.

The Court agrees. The newly named Defendants received sufficient constructive notice because they share counsel and were employed by Defendant custodial institutions at the time of the alleged events. In the original complaint, Plaintiff described the events that occurred while he was in custody and the conduct of custodial actors in failing to provide medical and psychiatric aid during the time frames in question. These Defendants had constructive notice because they "shared a community of interest with the named agency defendants through their continued employment and shared legal representation." *White v City of Los Angeles*, Case No. 19-00243 DDP (RAOx), *6, 2020 WL 9893054 (C.D. Cal. July 24, 2020). Therefore, the newly named Defendants will not be prejudiced by their inclusion in the TAC.

Finally, all the newly named Defendants should have known that they could likely

be names in an action arising from the events concerning Plaintiff because they were employees at the Central Jail or George Bailey Detention Center who were charged with overseeing Plaintiff's well-being and participated in the events giving rise to Plaintiff's causes of action. *Butler*, 766 F.3d at 1202. Although Defendants argue that it is insufficient for notice purposes that they all worked for the County of San Diego, they cite no authority for this proposition. Thus, the Court finds the third *Butler* factor is satisfied.

In sum, the claims against newly named Defendants Robert Brauer, Nicolas Gula, William Diaz, Raymond Altemeyer, Adrian Valenzuela, Cole Studebaker, Emilio Gonzalez, Israel Santos, Emmanuel Ramirez, David Williams, Walberto Gaona, Erik Martinez, Jason Morgan, Lt. Daniel Dennis, Benjamin Rivera, Bryan Do, Ryan LaBranche, Joshua McIntyre, Christian Anderson, David Guzman, and Gilbert relate back to the original complaint and are not time-barred under Rule 15.

**2. California Rule of Civil Procedure 474**

Even under California law, Plaintiff would be allowed to replace the newly named Defendants for Doe defendants. In the original complaint, Plaintiff signaled that there were numerous unknown Defendants by including "Does 1-50." Through discovery, Plaintiff has now been able to identify additional Defendants. Although the TAC reduced the number of Does to 1-11, prohibiting Plaintiff from adding the new Defendants would run afoul of the policy of lenient amendment recognized by both California and the Ninth Circuit. In *Woo*, the state appellate court held that "the courts of this state have considered noncompliance with the party substitution requirements of section 474 as a procedural defect that could be cured and have been lenient in permitting rectification of the defect." *Woo*, 75 Cal.App.4th at 177 (citations omitted). Similarly, the Ninth Circuit has held "California's policy in favor of litigating cases on the merits requires that the fictitious name statute be liberally construed." *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 801 (1986). Accordingly, the claims against the newly named defendants are not time-barred and relate back under California law.

//

### B. Rule 8(a)(2) Pleading Requirements for Multiple Defendants

Generally, "[a] plaintiff suing multiple defendants 'must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)[.]'" *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)). "[A] plaintiff's allegations must 'provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them,' including 'what conduct is at issue.'" *Sebastian Brown Productions, LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) (quoting *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL 1338297, at *5 (N.D. Cal. Mar. 28, 2014)). Complaints "must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011).

Defendants argue that the claims against the newly added Defendants must be dismissed because a plaintiff suing multiple defendants cannot simply "lump defendants together" but instead "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)" citing *Flores*, 997 F.Supp.2d at 1103. Mot. at 8-9, ECF No. 86-1. They contend that Defendants Brauer, Gula, Diaz, Altemeyer, Valenzuela, Studebaker, Gonzalez, Santos, Ramirez, Williams, Gaona, Martinez, Morgan, and Dennis ("County Jail Officers"), as well as Defendants Rivera, Do, LaBranche, and McIntyre ("George Bailey Officers") are never identified in the TAC without being lumped together, and there are no individualized facts with respect to any of them. Similarly, Defendant contends that the allegations against Defendant Guzman are routinely lumped in with Defendants Rivera, Do, LaBranche, and McIntyre.

In response, Plaintiff argues that "a number of the individual defendants' liability is predicated on similar allegations," therefore, naming them together is sufficient under Rule 8. Oppo. at 22. He also notes that the newly named Defendants were given notice, and Defendants do not argue otherwise.

Here, Plaintiff has provided specific allegations of harm attributable to these Defendants such that the Defendants have sufficient notice of claims asserted against them. Therefore, it is immaterial that Plaintiff "did not attribute every single act underlying its [claims] to a specific []Defendant." *Luminate Home Loans v. Better Mortgage Co*, No. 24-CV-2251-BAS-MSB, *2, 2026 WL 836620 (Mar. 26, 2026 S.D.Cal.); S*ebastian Brown Productions, LLC*, 143 F. Supp. 3d at 1042 (finding all defendants—including a corporation and its officers—had sufficient notice because plaintiff's complaint asserted that all defendants committed trademark infringement); *see also Whitehead v. Pacifica Senior Living Mgmt. LLC*, No. 18-CV-01767-JSW, 2019 WL 13117458, at *3 (N.D. Cal. Jan. 3, 2019) (finding defendants were on sufficient notice because plaintiff's complaint asserted all defendants are severally liable for the same alleged violations). Thus, the Court **DENIES** Defendants' motion to dismiss Plaintiff's claims on the basis that they impermissibly lump the new Defendants together.

### C. DELIBERATE INDIFFERENCE TO MEDICAL NEEDS/CONDITIONS OF CONFINEMENT (CLAIM 1)

"[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). "[T]he plaintiff must 'prove more than negligence but less than subjective intent - something akin to reckless disregard.'" *Gordon*, 888 F.3d at 1125. In addition, "[j]ail officials have a duty to ensure that detainees are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018).

"[T]he Supreme Court has treated medical care claims substantially the same as other conditions of confinement violations including failure-to-protect claims." *Gordon,* 888 F.3d at 1124.

Under *Gordon*, in order to state a Fourteenth Amendment deliberate indifference

claim, a pre-trial detainee, such as Plaintiff, must allege facts sufficient to show that:

> (i) [t]he defendant made an intentional decision with respect to the conditions under which [he] was confined; (ii) those conditions put [him] at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused [his] injuries.

*Id.*

Defendant argues that this claim must be dismissed because the "allegations are grouped together and fail to describe how each individual was deliberately indifferent to Plaintiff's medical needs." Mot. at 11, 12 ECF No. 86-1. Plaintiff asserts that he has sufficiently alleged that the Defendants were deliberately indifferent to his serious medical needs and notes that this Court determined in its Order denying Defendant's motion to dismiss the SAC that Defendants' inaction in the face of "the deterioration of Plaintiff's medical and mental health, demonstrates a failure to take reasonable measures to abate the risk of harm." Oppo. at 24; *See* Report and Recommendation ECF No. 43 at 15; adopted by Order ECF No. 44.

The Court finds that Plaintiff has sufficiently alleged a deliberate indifference to medical needs and conditions of confinement claims against newly named Defendants Brauer, Gula, Diaz, Altemeyer, Valenzuela, Studebaker, Gonzalez, Santos, Ramirez, Williams, Gaona, Martinez, Morgan and Lt. Dennis. First, Plaintiff alleges that the Defendants made the intentional decision to allow Plaintiff to languish in unsanitary and medically inadequate confinement. In the TAC, Plaintiff alleges that from September 9 to September 10, 2022,

> The above mentioned deputies saw WARD physically ailing. His psychiatric and medical conditions were severe and obvious. The above mentioned deputies saw Ward ill, lethargic, coughing, having trouble breathing, and disassociated. They heard Ward coughing and moaning in pain [but] the above mentioned deputies did not notify any medical personnel about Ward's deteriorating state.

//

TAC ¶¶ 93-94.

According to the TAC, these Defendants "never entered Ward's cell, cleared the trash from his cell, gave him any clothing or blanket, or gave him adequate food and water." *Id.* ¶ 92. Plaintiff further asserts that "[d]espite observing Ward's obvious signs of pneumonia, the above-mentioned deputies deliberately did not summon immediate medical care," which led to him contracting "bacteremia and becoming gravely ill." *Id.* ¶ 97. Assuming the truth of the facts asserted, the assertions illustrate that the decision to allow Plaintiff to remain in these conditions put him at substantial risk of suffering serious harm, and Defendants did not take measures to alleviate the risks. As a result of this conduct, the TAC asserts that Plaintiff suffered serious illness and injury. This is sufficient to state claims for deliberate indifference to medical needs and conditions of confinement to survive a motion to dismiss. *See Gordon*, 888 F.3d at 1125.

Moreover, Defendants were provided with sufficient notice as to the claims asserted against them, as noted before, even if Plaintiff did not specifically connect each act underlying the claims to specific defendants. *Luminate Home Loans* 2026 WL 836620 *2 ("Even if [Plaintiff] did not attribute every single act underlying its counterclaims to a specific Counter-Defendant, the Court finds that [the] complaint does provide all Counter-Defendants with sufficient notice as to the claims asserted against them.") For these reasons, the Court **DENIES** Defendants' motion to dismiss the deliberate indifference causes of action.

### D. FAILURE TO PROTECT/INTERVENE (CLAIM 2)

"To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "It is not, however every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's

safety." *Farmer*, 511 U.S. at 834. "The elements of a pretrial detainee's failure to intervene/protect claim under the Fourteenth Amendment are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved; and (4) by not taking such measures, the defendant caused plaintiff's injuries." *Tamrat v. Mercardo*, Case No. 24-cv-08604-TLT, 2025 WL 1580869, *2 (June 4, 2025 N.D. Cal.)(citing *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). "[A] pretrial detainee who asserts a due process claim for failure to protect [must] prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

Defendant seeks dismissal of the claim, arguing that "Plaintiff's claims are at best speculative in that he alleges that Rivera, Do, Labranche, and McIntyre "greenlighted" Plaintiff (i.e., signaled to inmate gang member[s] that they could beat him)." ECF No. 86-1 at 13. In addition, Defendants argue that the allegations against the five defendants are not individualized enough to sustain a claim against any of them. *Id.*

Plaintiff counters that the claims are sufficiently pled because he asserts that the George Baily housing deputies placed Plaintiff in a general population pod, indicated that "the inmates had the permission to beat Ward, and later confirmed as much by stating 'Next time you're at the beach, keep your hands to yourself.'" Oppo. at 27. In light of these assertions, Plaintiff argues that "the Court can easily conclude that signaling approval to beat an inmate, ignoring the assault as it occurs, and later basically ratifying the assault is sufficient to constitute a failure to protect claim." *Id.*

Here, the TAC contains sufficiently alleged assertions that Bailey Defendants (Guzman, B. Rivera, Bryan Do, Ryan LaBranche, and Joshua McIntyre) violated Plaintiff's § 1983 rights under the Fourteenth Amendment for their failure to protect or intervene to survive a motion to dismiss. First, Plaintiff claims that Defendants Rivera, Do, LaBranche,

and McIntyre made the intentional decision to tell "violent gang members about Plaintiff's alleged crime [of attempted kidnapping of a child] knowing that the inmates would want to beat Plaintiff" and then "presented Plaintiff to the violent inmates and signaled that he was the one to be beaten (that is, the deputies 'greenlighted' Plaintiff)." *Id.* ¶ 250(b), (e). This put Plaintiff at risk of suffering serious harm. Assuming the truth of these allegations and construing them in the "the light most favorable to the nonmoving party," this satisfies the first element of a failure to protect claim. *Cahill*, 80 F.3d at 337–38.

Next, Plaintiff asserts he suffered serious injuries as a result of the intentional decision made by the Defendants who failed to abate the risk. He claims that these Defendants "watched or deliberately ignored Plaintiff while the gang members took Plaintiff to the showers and beat him mercilessly[,] dislocating his jaw[,] and smashing his head into a shower wall," causing a "broken jaw requiring emergency surgery, infection in his gums resulting from the surgery, further pain and worsening of the condition in his bilaterally dislocated shoulders, a laceration on his forehead, worsening psychosis, loss of sleep, anxiety, depression, PTSD, severe emotional distress." *Id.* ¶¶ 250(g), 251. Plaintiff contends that Defendant Guzman failed to supervise, train, and discipline the aforementioned Defendants. *Id.* ¶ 250 (j),(k).

Consequently, Plaintiff has pled the elements of a failure to protect claim with enough specificity for Defendants to be on notice and defend themselves. In addition, Defendants' assertion that Plaintiff has lumped the allegations against the Defendants fails because the TAC provides Defendants with sufficient notice as to the claims asserted against them. *Luminate Home Loans*, No. 24-CV-2251-BAS-MSB, *2, 2026 WL 836620.

For these reasons, Defendants' motion to dismiss Plaintiff's failure to protect/intervene claim is **DENIED**.

### E. BANE ACT CALIFORNIA CIVIL CODE § 52.1 (CLAIM 4)

"A plaintiff bringing a Bane Act [Cal. Civ. Code § 52.1(a)–(c)] claim must prove 'two distinct elements': '(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference

was by threats, intimidation or coercion.' " *Cisneros v. Vangilder*, No. 16-CV-00735-HSG, 2019 WL 285800, at *6 (N.D. Cal. Jan. 22, 2019) (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)). "Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials 'knowingly deprived [them] of a constitutional right or protection through acts that are inherently coercive and threatening,' such as housing a prisoner in an inappropriate cell, failing to provide treatment plans or adequate mental health care, and failing to provide sufficient observations." *Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1195 (E.D. Cal. 2018). "[M]ultiple district courts have adopted the position that 'a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs ... adequately states a claim for relief under the Bane Act.' " *Galley v. Cnty. of Sacramento,* No. 2:23-CV-00325 WBS AC, 2023 WL 4534205, at *5–6 (E.D. Cal. July 13, 2023) (quoting *M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013)).

Defendant claims this cause of action must be dismissed because there can be no Bane Act claim without a sufficiently alleged underlying constitutional violation, and "Plaintiff's attempt to lump all Moving Defendants together did not sufficiently allege a constitutional violation against any of them, and therefore, cannot succeed on his Bane Act case of action." ECF 86-1 at 14. Plaintiff counters that "Defendants' only argument in support of its request for dismissal of Plaintiff's Bane Act claim is that Plaintiff has not sufficiently alleged a constitutional violation," but "Plaintiff has done so and the motion should be denied." Oppo. at 29.

The Court agrees. As explained above, Plaintiff has sufficiently alleged constitutional claims for deliberate indifference to medical needs and conditions of confinement, along with claims for failure to protect/intervene. Accordingly, Defendants'

motion to dismiss Plaintiff's Bane Act claim is **DENIED**.

### F. CALIFORNIA GOVERNMENT CODE § 845.6- FAILURE TO SUMMON MEDICAL CARE (CLAIM 5)

"In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." *Watson v. State*, 21 Cal.App.4th 836, 841 (Ct.App.1993). Section 845.6 "is very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for a certain employee's malpractice in providing that care." C*astaneda v. Dep't of Corrections and Rehabilitation*, 212 Cal.App.4th 1051, 1070 (2013).

Defendants move to dismiss Plaintiff's claim brought pursuant to California Government Code Section 845.6, arguing that "all allegations against Defendants are again lumped together," and "there is not any allegation within this specific cause of action which is individualized against any one Defendant." ECF No. 86-1 at 15. Defendants contend that Plaintiff is attempting to impermissibly rely on the "the exact same facts against Yi and Echon for another 13 individuals." *Id.*

Plaintiff counters that the TAC includes allegations that the named Defendants "conducted EOH Welfare Checks and did not summon any medical attention" despite seeing that Plaintiff was lethargic, "coughing, having trouble breathing, disassociated," and "moaning in pain." Oppo. at 29.

The TAC contains sufficient facts to support Plaintiff's claim. The cause of action is asserted against RN Yi, Medical Supervisor Doe, Gilbert, NP Cornejo, RN Echon, Deputy Defendants Brauer, Gula, Diaz, Altmeyer, Valenzuela, Studebaker, Gonzalez, Santos, Ramirez, Williams, Gaona, Martinez, Morgan, and Lt. Dennis ("Deputy Defendants"). TAC ¶ 291. Plaintiff contends that between September 4 and September 10, 2022, Deputy Defendants "all conducted EOH Welfare Checks and did not summon any

medical attention for Plaintiff." *Id.* ¶ 91. According to the TAC, these Defendants knew or had reason to know of Plaintiff's need for immediate medical care because his psychiatric and medical conditions "were severe and obvious." The above mentioned deputies saw Plaintiff ill, lethargic, coughing, having trouble breathing, and disassociated. They heard Plaintiff coughing and moaning in pain. *Id.* ¶ 93. Yet, "the above mentioned deputies did not notify any medical personnel about Plaintiff's deteriorating state." *Id.* ¶ 94.

With regard to Lt. Dennis, the TAC alleges that he was "a sworn Deputy in the SDSD at Central Jail responsible for overseeing custodial officers and inmates, [but] did not summon medical attention despite seeing Plaintiff less than one hour before his medical emergency." *Id.* ¶ 95. The TAC asserts that all of the Defendants "failed to take reasonable action to summon medical care by: choosing not to house Plaintiff in a medical observation cell or psychiatric cell, failing to conduct nurse assessments every twenty-four hours, failing to enter or clean Plaintiff's cell; failing to summon medical and psychiatric care before he was found unresponsive on September 10, despite obvious signs of severe psychosis and pneumonia" and that "Defendants' conduct was an actual and proximate cause of Plaintiff's pain, suffering, severe psychosis, lung infection, seizure, bilateral posterior shoulder dislocation, and pulmonary embolism. . ." *Id.* ¶¶ 298-299.

These allegations sufficiently state a claim under Section 845.6 and put each of the named Defendants on notice of the allegations against them. Defendants' motion to dismiss this claim is **DENIED**.

### G. NEGLIGENCE (CLAIM 6) AND NEGLIGENT SUPERVISION AND TRAINING (CLAIM 7)

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Phillips v. TLC Plumbing, Inc.*, 172 Cal.App.4th 1133, 1139 (2009)(citing *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339 (1998). A plaintiff seeking to hold an employer liable for negligent supervision must prove the elements of negligence and that the employer knew or had "reason to believe the

employee is unfit or fails to use reasonable care to discover the employee's unfitness." *Estate of Bonin v. Co. of San Diego*, Case No. 23-cv-2158-MMA-MSB, 2024 WL 7022706, *14 (S.D.Cal. May 2, 2024) (citing *Alexander v. Cmty. Hosp. of Long Beach*, 259 Cal. Rptr. 3d 340, 356 (Cal. Ct. App. 2020).) "[L]iability for [negligent supervision] can be imposed only when the employer knows, or should know, that the employee, because of past behavior or other factors, is unfit for the specific tasks to be performed." *Federico v Sup. Court.,* 59 Cal.App.4th 1207, (Cal. Ct. App. Nov. 14, 1997). "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this action, have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2(a).

Defendant contends that the negligence causes of action must be dismissed because "Plaintiff has failed to plead any individualized facts against any of the Moving Defendants" and "the negligent supervision and training cause of action which is asserted against Defendant Guzman is predicated on the assumption that Defendants Rivera, Do, LaBranche, and McIntyre were negligent [but] Plaintiff has failed to plead facts which support how any of these individuals were negligent." ECF No. 86-1 at 15.

In response, Plaintiff argues that the allegations in the TAC sufficiently put each Defendant on notice. Oppo. ECF No. 88 at 30.

In the negligence cause of action, Plaintiff asserts the Defendants were negligent during two time-frames: (1) September 4-10, 2022, and (2) September 29-30, 2022. He specifically alleges that during the first time period, the Defendants had a duty of reasonable care as "jailers" that they breached by failing to conduct adequate initial and ongoing medical and psychological assessments, failing to provide medications, and failing to seek immediate medical attention when Plaintiff's condition worsened, which was the proximate cause of his injuries. TAC ¶¶ 304-305. During the second time period, Plaintiff claims that the County of San Diego, Deputies Anders, Rivera, Do, LaBranche, and McIntyre had a duty to assure his safety while at George Bailey, but they failed to house

him in protective custody, a medical unit or psychiatric unit, and allowed inmates to attack Plaintiff, which was the proximate cause of his injuries. *Id.* ¶¶ 310-311. Taking these allegations as true, Plaintiff has sufficiently alleged that Defendants had a duty, the breach of which caused Plaintiff's injuries, thereby stating a cause of action for negligence. *Cahill*, 80 F.3d at 337–38.

In the negligent supervision and training cause of action, Plaintiff first claims that the County of San Diego is subject to liability pursuant to Cal. Gov. Code § 815.2(a). With regard to the Central Jail Supervising Defendants, Plaintiff alleges that they can be held liable for negligently supervising Medical Supervisor Doe and Deputy Supervisor, who were employees of County. TAC ¶ 323-24. According to Plaintiff, Supervisor Defendants, and Defendant Guzman had a duty "to train and supervise their employees," but these Defendants breached the duty because they "failed to train their employees, contractors, and agents to properly evaluate the health of and risks to detainees at intake and while in custody, to identify serious symptoms of medical distress such as the signs of flu, pneumonia, or psychosis, to determine proper and adequate courses of treatment for detainees in need of medical and psychiatric treatment, and how to summon and provide adequate medical care when necessary." TAC ¶327. Plaintiff alleges that these Defendants "knew their failure to adequately train their staff made it highly predictable and foreseeable that its employees and agents would engage in conduct that would cause detainees harm and result in severe medical and psychiatric distress." *Id.* ¶ 328. Plaintiff asserts that "[t]he negligence of COUNTY and Supervisor Defendants in supervising and training their employees was the direct, proximate, and foreseeable cause of Plaintiff's harm." *Id.* ¶ 328.

With regard to the George Bailey Defendants, Plaintiff alleges that the "COUNTY and DEPUTY SUPERVISOR SERGEANT GUZMAN knew of the heightened risk of violence towards psychiatric inmates from other inmates, and that failing to put psychiatric inmates in adequate housing would lead to violent confrontations with other inmates." *Id.* ¶ 334-35. The Complaint asserts that the "negligence of COUNTY and DEPUTY SUPERVISOR SERGEANT GUZMAN in supervising and training their employees" was

the direct, proximate, and foreseeable cause of Plaintiff's harm." *Id.* ¶ 337.

Here, Plaintiff has not alleged that the supervisor Defendants had reason to believe the subordinate employees were unfit, or that these Defendants failed to use reasonable care to discover the employee's unfitness. *Estate of Bonin*, Case No. 23-cv-2158-MMA-MSB, 2024 WL 7022706, *14; *Alexander,* 259 Cal. Rptr. 3d at 356. Although Plaintiff claims that Defendants' failure to properly supervise made it "highly predictable and foreseeable" that Plaintiff would be harmed, the Complaint does not contain sufficient factual allegations to support all of the elements of a failure to supervise claim. *Pallamary v. Elite Show Services*, 2018 WL 3064933 (S.D.Cal. June 19, 2018)(Plaintiff's failure to supervise claim dismissed because plaintiff did "not alleged facts sufficient to support a reasonable inference that Defendant [] knew or should have known that Defendants [] would act in a certain manner with respect to Plaintiff") compare *Estate of Escobar v. United States,* 2022 WL 3209380 (S.D. Cal. Aug. 8, 2022)(Court denied Defendant's motion to dismiss Plaintiff's failure to supervise claim because plaintiff sufficiently alleged that defendants . . . knew, or should have known, that [subordinate Defendants] were unfit in light of prior complaints about inadequate medical care for detainees.")

For these reasons, Defendant's Motion is **DENIED** with respect to the negligence cause of action and **GRANTED** with respect to the negligent supervision cause of action.

## V. CONCLUSION AND ORDER

Accordingly, Defendants' Motion to Dismiss the Third Amended Complaint is **DENIED IN PART AND GRANTED IN PART.**

**IT IS SO ORDERED**.

Dated: September 30, 2026

Honorable Benjamin J. Cheeks
United States District Judge